UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOVEMENT MORTGAGE, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TODD SCRIMA,<br><br>　　　　Defendant. | No. 2:23-cv-02904-DJC-CSK<br><br><br><br>ORDER |

Before the Court is Defendant Todd Scrima's Motion to Dismiss on the basis that Plaintiff's claims are preempted by the California Uniform Trade Secrets Act and that Plaintiff has failed to sufficiently allege claims against Defendant in his personal capacity.  While the Court agrees that Counts Three Through Six are preempted by the California Uniform Trade Secrets Act, the Court concludes that Plaintiff has sufficiently alleged claims against the Defendant in his individual capacity.  Accordingly, Defendant's Motion is GRANTED IN PART on preemption grounds and DENIED IN PART.

**I.　　Background**

Plaintiff Movement Mortgage, LLC ("Movement"), a real estate financing company, brings the present suit against Defendant Todd Scrima, the owner and President of Movement's competitor Summit Funding, Inc. ("Summit"), alleging that

Defendant personally directed a scheme to steal and misappropriate Movement's trade secrets, including Movement's business model, customer data, and employee data, which led to the solicitation of numerous Movement employees and loss of business. (Compl. (ECF No. 1) ¶¶ 5, 7, 12–13, 31–32, 51, 74.)

Plaintiff alleges that Defendant engaged high-level Movement employees and employees with broad access to Movement's information, including a Vice President, divisional, market, and sales leaders, and an assistant to a divisional leader, to carry out his scheme. (*Id.* ¶¶ 12, 17, 21, 24.) He then directed those employees to obtain documents from Movement's database and provide them to Summit. (*Id.* ¶¶ 27–29, 46.) One employee, Linda Plymale, downloaded and exported extensive information about Movement's loans and loan officers, training and recruiting, various positions at Movement, and other business methods information. (*Id.* ¶¶ 29–34.) Within months of downloading this information, Plymale resigned from Movement and began working for Summit days later. (*Id.* ¶¶ 29, 33, 36.) Another employee, Deran Pennignton, the Executive Vice President of Recruiting, allegedly obtained Movement's profit and loss statements ("P&Ls") and provided them to Summit at Defendant's behest. (*Id.* ¶¶ 39–46.) Pennington allegedly signed a confidentiality agreement with Summit in March 2023, but continued working at Movement for months in order to obtain the information. (*Id.* ¶¶ 23–25.)

According to Plaintiff, Defendant then used that information to target other employees at Movement, including loan officers, and direct them to divert loans and customers to Summit. These loan officers would obtain information about the customers and prepare their loans, but instead of finalizing the loans, would divert the customers to a loan officer at Summit, after which they would resign from Movement and start employment with Summit. (*Id.* ¶¶ 51–60.) Summit would then ultimately finalize the loans with the diverted customers. (*Id.*) In total, Summit solicited more than 50 Movement employees. (*Id.* ¶ 74.)

Plaintiff alleges that Defendant's conduct violates the federal Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, the California Uniform Trade Secrets Act ("CUTSA") Cal. Gen. Stat. § 3426, the California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200 *et seq.*, the California Comprehensive Computer Data Access and Fraud Act ("Computer Fraud Act"), Cal. Penal Code § 502,[1] and constitutes tortious interference with contractual relations and civil conspiracy.  (*See Id.* ¶¶ 63-133.)

Defendant brings the present Motion to Dismiss arguing that Plaintiff's tort claims and claims under the UCL and section 502 are preempted by the California Uniform Trade Secrets Act and argues that Plaintiff has failed to state a claim against Defendant in his personal capacity.  (Mot. to Dismiss ("MTD") (ECF No. 6).)  Plaintiff has opposed the Motion and Defendant has filed a Reply.  (*See* Opp'n (ECF No. 11); Reply (ECF No. 13).)  Upon the joint Motion of the Parties, this case was submitted without oral argument pursuant to local rule 230(g).  (ECF Nos. 18 and 19.)

## II. Legal Standard for Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[1] Section 502 of the California Penal Code allows individuals to bring a civil suit against a violator of the California Data Access and Fraud Act.  Cal. Penal Code § 502(e)(1).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id*. (citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id*. at 679.

### III. Discussion

#### A. CUTSA Preemption

Section 3426.7 of the California Uniform Trade Secrets Act "implicitly preempts alternative civil remedies based on trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009).  "The statute's preemptive sweep is broad – it supersedes all claims premised on the wrongful taking and use of confidential and proprietary information, even if that information does not meet the statutory definition of a trade secret." *VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*, No. SA-CV-16-01553-CJC-DFM, 2020 WL 6259999, at *4 (C.D. Cal. Sept. 28, 2020) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010)).  The act does not affect contractual or criminal remedies, whether or not based on appropriation of trade secret, nor does it affect other civil remedies "that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b).  However, any civil claims that are '"based on the same nucleus of facts as the misappropriation of trade secrets claim" are preempted.  *K.C. Multimedia*, 171 Cal. App. 4th at 958 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).

"The preemption inquiry for those causes of action not specifically exempted by [section] 3426.7(b) focuses on whether other claims are no more than a restatement of the same operative facts supporting trade secret misappropriation." *Farmers Ins.*

*Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2014 WL 466274, at *3 (E.D. Cal. Feb. 5, 2014). "Preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim." *Id.* (*quoting Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-CV-1992-MM-POR, 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009)). The claims cannot "simply depend on a 'different theory of liability' to survive CUTSA's preemptive effect." *Philips N. Am. LLC v. Advanced Imaging Servs., Inc.*, No. 2:21-CV-00876-JAM-AC, 2021 WL 5054395, at *3 (E.D. Cal. Nov. 1, 2021). Rather, claims must allege "materially distinguishable" facts to avoid preemption. *C&H Travel & Tours, Inc. v. Chow*, No. 2:18-CV-06690-RGK-MRW, 2018 WL 6427369, at *3 (C.D. Cal. Sept. 26, 2018). "If the claim is based 'in essence [on] the same wrongdoing' as the alleged CUTSA claim, it is preempted." *Id.* at *3. For example, where the defendant used fake credentials to gain access to trade secrets, a fraud claim based on the fake credentials was preempted by CUTSA because both claims "ar[o]se from Defendants' unauthorized access to Plaintiff's system." *Philips*, 2021 WL 5054395 at *3. In contrast, a claim that the defendant "disparaged Plaintiff to employees or convinced employees to join a competitor" without using trade secret information was not based on the same facts as the trade secret misappropriation claim. *C&H Travel & Tours,* 2018 WL 6427369 at *3.

Defendant asserts that Plaintiff's tortious interference with contractual relations, civil conspiracy, UCL, and California penal code section 502 claims are preempted by CUTSA. The Court will address each in turn below.

      **i.  Intentional Interference with Economic Relations**

The tortious interference claim alleges that Defendant interfered with the contractual agreements entered into by Plaintiff and its former employees by inducing them to violate restrictive covenants, non-solicitation agreements, and confidentiality agreements. (Compl. ¶¶ 15–18, 97.) Specifically, Plaintiff alleges that Defendant targeted Movement employees and "ordered the misappropriation of Movement's confidential information and trade secrets through these employees, inducing and

5

causing them to violate their contractual obligations with Movement." (*Id.* ¶ 98.) This claim is based on the same facts as the misappropriation of trade secrets because the contracts were breached by misappropriating the trade secrets. Like in *Phillips*, the tortious interference claim excises a portion of facts underlying the CUTSA claim and attempts to fashion a second claim out of those same facts in contravention of CUTSA.

In *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, the court found an interference with contract claim alleging similar facts to be preempted both legally and factually by CUTSA. 171 Cal. App. 4th at 960–61. There, the plaintiff alleged that the defendant had encouraged the employee to misappropriate the trade secrets, and that the employee breached the contract *by misappropriating the trade secrets*. *See id.* The claim was legally preempted because CUTSA covers "improper means" of acquiring a trade secret including the "breach or inducement of a breach of a duty to maintain secrecy." *Id.* Factually, the two claims were based on the same conduct of encouraging the employee to acquire and share confidential information. *Id.*

In contrast, in *Rovince Intern. Corp. v. Preston*, the court found the interference claim could be separated from the CUTSA claim because the contract was not breached by the misappropriation itself. There, the defendant "persuaded one of [the plaintiff's] suppliers to breach its contract" with the plaintiff. No. CV-13-3527-CAS-PJW, 2013 WL 5539430, at *4 (C.D. Cal. Oct. 7, 2013). The court found that the claim was not preempted because "none of the elements of Rovince's claim for inducing breach of contract will turn on [the employee]'s alleged misuse of confidential information." *Id.* at *5. The *Rovince* court distinguished *K.M. Multimedia*, where the plaintiff "could only prevail on their claim for contractual interference if they proved that trade secrets were in fact misappropriated." *Id.* Here, similar to *K.C. Multimedia* Plaintiff's claim with respect to the restrictive covenants and confidentiality agreements relies on proving misappropriation because Plaintiff alleges that it was the misappropriation of confidential information by the employees which violated those

6

agreements.

The portion of the interference claim alleging violation of the non-solicitation agreements also cannot be separated from the misappropriation claim. Plaintiff alleges that it was Defendant's use of the misappropriated trade secrets which "result[ed] in the successful solicitation of fifty (50) Movement employees whom Defendants *could not have solicited without the trade secret and data theft described herein*." (Compl. ¶ 74 (emphasis added).) The solicitation of the employees is therefore inherently intertwined with the misappropriation of the trade secrets.

*JEB Group, Inc. v. San Jose*, relied on by Plaintiff, is factually distinguishable. There, the plaintiff alleged that the defendants improperly solicited the plaintiff's clients and thereby interfered with the plaintiff's prospective economic relations. No. CV-19-04230-CJC-AGR, 2020 WL 2790012, at *3 (C.D. Cal. Mar. 31, 2020). However, it was "unclear from the complaint whether this improper solicitation hinged on Defendants' misappropriation of [Plaintiff]'s confidential client lists." *Id*. at *4. Accordingly, the court, viewing the complaint in the light most favorable to the plaintiff, held that it was "reasonable to infer that Defendants interfered with [Plaintiff]'s business relationships without relying on trade secrets or other confidential information." *Id*. Here there is no such ambiguity: Plaintiff explicitly alleges that Defendant did rely on the trade secrets in order to improperly solicit the other employees. Accordingly, this claim is preempted by CUTSA.

### ii.   Civil Conspiracy

The civil conspiracy claim is also preempted by CUTSA because it relies on the same facts as the CUTSA claim. Plaintiff alleges that Defendant "conspired to take the tortious actions described herein against Movement together with certain Movement employees . . . for the primary purpose of acquiring and misusing Movement's trade secrets and confidential and proprietary information as well as to solicit Movement employees and customers . . . ." (Compl. ¶¶ 113–114.) Despite Plaintiff's attempt to split hairs and argue that Defendant had initially only "developed a scheme to initiate

7

a corporate raid of Movement's employees using the Company's former high-level managers," the Complaint does not allege that Defendant took any steps in furtherance of this limited conspiracy or engaged the other employees at this point. (Opp'n at 10; Compl. ¶ 12.)  Instead, Plaintiff alleges in the next sentence that Defendant "recognized that Summit was not able to successfully compete with Movement, recruit its staff, or be competitive in the marketplace even with those former members on board if he did not also steal Movement's trade secrets and computer file" and that Defendant "personally orchestrated a plan to steal Movement's trade secrets *to facilitate his plans* to raid its employees and copy its business model."  (Compl. ¶ 12 (emphasis added).)  According to Plaintiff's allegations, the misappropriation was integral to the goal of soliciting employees and diverting customers.  Plaintiff does not allege any conspiratorial conduct unrelated to this scheme to misappropriate trade secrets.  As such, the claim is preempted under CUTSA.

Despite Plaintiff's reliance on *Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, which held that the formation of a conspiracy can be separated from CUTSA by the addition of facts including the agreement to steal trade secrets and the formation of the conspiracy, that case is inconsistent with the nucleus of facts test and its premise has been rejected by multiple courts.  *See Arthur J. Gallagher & Co. v. Tarantino*, No. 20-CV-05505-EMC, 2022 WL 4092673, at *15 (N.D. Cal. July 27, 2022) (collecting cases).  Courts have held that merely adding additional facts to a claim or pleading a different theory of liability based on the same facts is not sufficient to escape CUTSA preemption where the core facts are common among the claims.  *See Philips*, 2021 WL 5054395 at *3; *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *12 (N.D. Cal. Dec. 11, 2012).  "[T]he nucleus of fact test does not focus on whether a non-CUTSA claim requires the pleading of different elements than the CUTSA claim, but rather on whether 'there is [a] material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in [the non-CUTSA] claim . . .

8

.'"  *SunPower Corp.*, 2012 WL 6160472, at *12.  As stated above, because the civil conspiracy claim is based on the same core facts as the CUTSA claim, it is preempted.

////

////

### iii.   Section 502 and UCL

Plaintiff argues that its UCL and section 502 claims cannot be preempted because they are based on statutory violations.  While CUTSA states that it does not "not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets," Cal. Civ. Code § 3426.7(a), this language does not apply to "every statute that *might be applied* to trade secret theft, but only to preserve the operation of the many statutes that *expressly allude* to trade secrets in particular settings."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 241 (2010), *as modified on denial of reh'g* (May 27, 2010) (emphasis in original).  Courts have found that both the UCL and section 502 are not the type of trade secret specific statute exempted by CUTSA because they are not directed at regulating trade secrets and have applicability beyond trade secrets.  *Id*. (UCL); *Teva Pharms. USA, Inc. v. Health IQ, LLC*, No. SA-CV-13-00308-CJC-RNB, 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013) (UCL);  *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017) (section 502); *C&H Travel*, 2018 WL 6427369, at *2 (section 502).  As such neither the UCL nor 502 are outside of CUSTA's preemptive reach.

Although some courts have determined that California Penal Code 502 is not preempted by CUTSA because the remedy is derived from a criminal code section and criminal remedies are exempted, these courts fail to account for the plain language of CUTSA which states that "civil *remedies*," based on misappropriation are preempted.  Cal. Civ. Code § 3426.7(b) (emphasis added); *see JEB Grp.,* 2020 WL 2790012, at *4 (relying solely on language from *K.C. Multimedia* that states CUTSA preempts "common law" claims in finding that a statutory violation cannot be

preempted and not referencing the language in CUTSA); *Heieck v. Fed. Signal Corp.*, No. SA-CV-18-02118-AGK-ES, 2019 WL 6873869, at *4 (C.D. Cal. Nov. 4, 2019) (finding no preemption because "section 502 is a criminal statute that contains criminal remedies" without acknowledging that the plaintiff was seeking a civil remedy, not a criminal remedy). The Court is instead persuaded by the reasoning in *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, No. 13-CV-02403-SI, 2015 WL 224815, at *2 (N.D. Cal. Jan. 15, 2015). There the court found that a claim under California Penal Code section 496, which similarly provides for civil remedies, was not exempted from CUTSA preemption because the plaintiff sought civil remedies, not criminal remedies. *Id.* Here too Plaintiff seeks only civil remedies and thus the claim is not exempted.

Both the UCL and section 502 claims are based on the same facts as the CUTSA claim and therefore preempted. The section 502 claim alleges that Defendant, through the former Movement employees, accessed Movement's computers and took its confidential and proprietary information. (Compl. ¶¶ 118, 121–124.) This allegation describes Defendant's scheme to use the former employees to steal trade secrets by downloading files from Movement databases and computers, and refers to the events recounted in the section of the Complaint entitled "Theft of Trade Secrets and Computer Files." (*Id.* ¶¶ 22–46.) And in fact, Plaintiff relies on the same exact allegations to form the basis of both the CUTSA and section 502. (*Compare id.* ¶¶ 83–86, *with id.* ¶¶ 124–127.) Accordingly, there is no meaningful difference between facts underlying the section 502 and CUTSA claims.

The UCL claim is derivative of the other claims already analyzed by the Court, and so it too is preempted. The UCL claim is based on "Defendant's acts, as alleged herein, including but not limited to his improper solicitation of Movement's borrowers, tortious interference with contracts, and aiding and abetting breaches of fiduciary obligations and duties of loyalty, and misappropriation of trade secrets and confidential and proprietary information . . . ." (*Id.* ¶ 106.) This claim does not allege any independent conduct which is not based on the same common factual nucleus as

10

the CUTSA claim and is therefore also preempted.

For the reasons described above, Counts Three through Six are preempted under CUTSA. Accordingly, Defendant's Motion is GRANTED IN PART, and these claims are DISMISSED.

### B. Failure to State a Claim Against Defendant

With respect to the remaining claims alleging violation of DTSA and CUTSA, Defendant argues that Plaintiff has failed to allege sufficient facts to hold him personally liable for the conduct at issue.

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (*quoting Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)). As Defendant has conceded, an individual may be liable for wrongful conduct committed on behalf of a company where that individual was the "'guiding spirit' behind the wrongful conduct, . . . . or the 'central figure' in the challenged corporate activity." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523, n.10 (9th Cir. 1989) (*quoting Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

Plaintiff's Complaint supports an inference that Defendant personally directed the conduct of the employees who stole confidential information from Movement. Plaintiff alleges that Defendant, as the sole owner and President of Summit, "personally orchestrated a plan to steal Movement's trade secrets to facilitate his plans to raid its employees and copy its business model" and provides copious documentary evidence to support these allegations. (*See* Compl. ¶¶ 5, 12; Exs. A–J (ECF Nos. 1-1–1-10).) First, in a text message thread, Defendant sent the contact information for a then-Movement employee, Plymale, and said that he had a "great call" "working on the first 90 day plan." (Compl. ¶ 27; Ex. B (ECF No. 1-2).) Within weeks of this message, Plymale began accessing and downloading a number of

Movement reports and documents from Movement's database in unprecedented ways. (*See* Compl. ¶¶ 27 –36.) She also retained her Movement laptop past the effective date of her resignation and visited Summit headquarters while she still had the laptop. (*See id.* ¶¶ 36–38.) Days later, Plymale began her employment with Summit, and accessed the downloaded Movement documents during the first few days of her employment. (*Id.*) All of these actions appear to stem from Defendant's "plan."

In a different thread, Defendant discusses "P&Ls" that he asked another officer to request from a different then-Movement employee, Pennington. Defendant asks, "did you receive p&l's[?]" to which the officer says, "Requested twice from Deran[2], not received." (*Id.*, Ex. C (ECF No. 1-3).) The Summit officer then asks, "Are you sure you want movement p&ls's (their proprietary/confidential docs) on summit servers?" to which Defendant replies "Not on our servers. Can you maybe set up misc whatsapp account and have them texted there?" (Compl. ¶ 40.) Again, these messages support the allegation that Defendant directed others to obtain the trade secret information.

Plaintiff also provides evidence that Defendant directed others to misappropriate the allegedly stolen trade secrets. Once the P&Ls were received, Defendant sent an email saying "Team, Please dissect this!" (*Id.* ¶ 41.) On a recorded call, a former Summit officer recounted the Summit CFO saying about analyzing Movement's stolen data "if Todd [Scrima] wants me to do this, I'm going to do this." (*Id.*, Ex. E (ECF No. 1-5) at 14.) These allegations, taken as a whole, sufficiently tie Defendant to the conduct at issue and support a plausible inference that Defendant was organizing and directing the alleged scheme to steal and misappropriate Movement's trade secrets.

There are also sufficient facts to support the allegation that Defendant directed the scheme to solicit Movement customers. The allegedly stolen information

---

[2] "Deran" refers to Deran Pennignton, Movement's then Executive Vice President of Recruiting.

contained lists of Movement employees and customers.  (*Id.* ¶¶ 42, 67.)  Months after Defendant and Summit received this information, loan officers began resigning from Movement, and joining Summit.  In the interim, these officers diverted Movement customers over to Summit.  (*Id.* ¶¶ 52, 58–60.)  Plaintiff alleges that this scheme too was orchestrated by Defendant.  (*Id.* ¶ 62.)  Although Plaintiff provides less facts tying Defendant personally to the scheme, the other facts pertaining to his involvement in obtaining and misappropriating the trade secrets, coupled with the close proximity between the retention of the trade secrets and the initiation of these scheme, and Defendant's role as the owner and President of Summit, make it plausible that Defendant was also the "guiding spirit" behind soliciting the other employees and customers.

Accordingly, Plaintiff's remaining causes of action are sufficiently plead, and the Motion is DENIED as to Counts One and Two.

### IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 6) is GRANTED IN PART as to Counts Three through Six and DENIED IN PART as to Counts One and Two.  Counts Three through Six are DISMISSED with leave to amend.  Any amended complaint must be filed within 30 days of the date of this Order.

IT IS SO ORDERED.

Dated: __June 10, 2024__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Movement23cv02904.mtd